# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONESIMO MARIN HARO, | 1:06-CV-00130 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, Warden, | |
| Respondents. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is represented in this action by Rich Pfeiffer, Esq.

### BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Santa Clara, following his conviction by court trial on June 14, 1990, of murder in the second degree in violation of Cal. Penal Code § 187. See Exhibit 1, Answer.  Petitioner was sentenced to a total indeterminate term of 17 years to life with the possibility of parole. Id.

On July 21, 2004, a parole suitability hearing was held by the California Board of Parole Hearings ("Board") at Avenal State Prison. See Exhibit 2, Answer. Petitioner attended the hearing and was represented by his attorney, Mary Ann Tardiff. Id. At the conclusion of the

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer, the exhibits lodged with Respondent's answer, and Petitioner's traverse.

1

1  hearing, the Board denied parole and deferred rehearing for three years. Id.

2  On October 21, 2004, Petitioner filed a petition for writ of habeas corpus in the Santa
3  Clara County Superior Court challenging the Board's decision. See Exhibit 5, Answer. The
4  petition was denied in a reasoned decision on January 13, 2005. Id.

5  On March 3, 2005, Petitioner filed a petition for writ of habeas corpus in the California
6  Court of Appeals, Sixth Appellate District. See Exhibit 6, Answer. On March 11, 2005, the
7  petition was summarily denied. Id.

8  On March 21, 2005, Petitioner filed a petition for writ of habeas corpus in the California
9  Supreme Court. See Exhibit 7, Answer. On January 18, 2006, the California Supreme Court
10 denied the petition with citation to In re Dannenberg, 34 Cal.4th 1061 (2005) and In re
11 Rosenkrantz, 29 Cal.4th 616 (2002). Id.

12 On January 17, 2006, Petitioner filed the instant petition for writ of habeas corpus in the
13 United States District Court for the Northern District of California. By order of the Court dated
14 January 26, 2006, the petition was transferred to the Eastern District and received in this Court.
15 The petition for writ of habeas corpus does not challenge the underlying conviction; rather, it
16 challenges the July 21, 2004, decision of the California Board of Parole Hearings denying parole.
17 Petitioner claims the Board erroneously denied parole without evidence in violation of his
18 constitutional rights.

19 On January 29, 2007, Respondent filed an answer to the petition. Petitioner filed a
20 traverse on February 9, 2007.

21 **FACTUAL BACKGROUND**[2]

22 On August 23, 1989, at approximately 2:00 a.m., officers of the Gilroy Police
   Department responded to 495 Adams Court, Gilroy, California to investigate a possible
23 shooting.

---

25 [2]This summary of the conviction offense is taken from the Report of the Probation Officer dated August 14,
   1990. See Exhibit 3, Answer.

2

>The investigating officers were met by relatives who indicated the defendant and the 49-year-old victim, Maria Benavides Haro, had both been shot with a handgun and were in the residence. The officer observed the victim to have suffered several bullet wounds in the abdomen and the defendant, a bullet wound to the chest area. As the victim was being transported to the hospital she stated to the investigating officer, "My husband tried to kill me." The victim further stated that her husband had shot her as he was jealous. The defendant stated to investigating officers that he shot his wife "because she does not love me, she loves another." Both the defendant and the victim were transported to San Jose Hospital via helicopter where the victim succumbed approximately 24 hours later.
>
>Subsequent investigation including testimony from various family members indicated the defendant and victim had been experiencing marital difficulties for at least the past six months. The victim had mentioned getting a divorce and the defendant on several occasions had made statements that he might do something he might regret. Family members had heard the defendant return home on the evening in question and go to the victim's bedroom where he engaged her in a conversation. A short time later a number of shots were heard with a long pause and then a final shot being fired.
>
>The investigating officers located a 38-caliber semiautomatic handgun on the floor in the victim's bedroom. The bed-sheets contained blood stains and there were several bullet holes going through the mattress. Three empty shell casings were located on the bed and an additional three empty brass casings on the floor. Additional 38-caliber ammunition and an empty 38-caliber clip with leather holster were found in the defendant's vehicle.
>
>During the course of the investigation the officers were presented with a letter written by the victim and addressed to "American or Mexican Authorities." In the letter the victim indicated her life had been threatened by her husband and should he carry out his threat she wished for him to be punished to the full extent of the law, that he suffer life in prison without parole. The letter was dated May 5, 1985.
>
>The Coroner's Report indicates the victim suffered seven bullet wounds and the cause of death was listed as gunshot wounds to the abdomen.
>
>The defendant suffered an apparent self-inflicted gunshot wound which lodged near his spine. The projectile was later removed and entered into evidence.

See Exhibit 3, Answer.

## DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

3

1  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th
2  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,
3  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).
4  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its
5  provisions.

6        Petitioner is in custody of the California Department of Corrections pursuant to a state
7  court judgment. Even though Petitioner is not challenging the underlying state court conviction,
8  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
9  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
10 Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
11 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
12 state prisoner in custody pursuant to a state court judgment, even when the petition is not
13 challenging his underlying state court conviction.'").

14       The instant petition is reviewed under the provisions of the Antiterrorism and Effective
15 Death  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S.
16 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless
17 the adjudication of the claim "resulted in a decision that was contrary to, or involved an
18 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
19 of the United States" or "resulted in a decision that was based on an unreasonable determination
20 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
21 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

22       As a threshold matter, this Court must "first decide what constitutes 'clearly established
23 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
24 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
25 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at

455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

With regard to the procedural protections outlined in Greenholtz, as Respondent submits, Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied.

Petitioner, however, contends the Board's decision was not supported by the evidence. A review of Petitioner's parole hearing reveals that the state court decision finding the Board's decision to be supported by some evidence was not unreasonable. The Board based its decision to deny parole on several findings. Contrary to Petitioner's arguments in his traverse, these findings were based on more than just the commitment offense.

First, the Board determined that the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2401(c)[3]. In support of its determination, the Board made a positive finding as to the factor set forth in § 2401(c)(1)(E), that the motive for the crime was very trivial. However, the superior court rejected the Board's finding on this factor stating the Board was "blind to the record." Id. at p. 1. The motive – jealousy relating to infidelity – "cannot be called trivial . . . and there can be no doubt about the intensity of Petitioner's emotions given

---

[3]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
    (C) The victim was abused, defiled or mutilated during or after the offense.
    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

7

that he turned the gun on himself immediately after shooting his wife." Id. at pp. 1-2. Thus, this factor relied on by the Board was not supportable and the state court properly disapproved it.

Nevertheless, the superior court found the Board's reliance on § 2401(c)(1)(D) was supported by the evidence. Under § 2401(c)(1)(D), the Board determined that the murder "clearly show[ed] a lack of regard for the life and suffering of others, his wife, certainly the primary victim, but the family that was left behind." See Exhibit 2 at p. 47. The superior court found this factor was supported by the fact that Petitioner's children were home when Petitioner decided to assail the victim while she slept, lock the doors behind him, and then kill her. See Exhibit 5 at p. 3. As the children could well have been injured or killed by one of the many stray bullets, and the children "were certain to be confronted with . . . both the sight of their dead mother and the knowledge that they had heard her being murdered," the superior court concluded there was some evidence to support the Board's finding that the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. Id. Clearly, the resulting effect on the children was devastating. At Petitioner's hearing, his two daughters pleaded with the Board not to grant parole because they feared their lives would be in danger should Petitioner be released. See Exhibit 2 at pp. 41-45. Based on the evidence, the superior court's determination was not unreasonable.

The Board further found that Petitioner posed an unreasonable risk of danger to society if released based on his past and present mental state, his social history, and his past and present attitude toward the crime. 15 C.C.R. § 2402(b). Of great import to the Board was a mental health assessment that was "not totally supportive of release." See Exhibit 2 at p.48. As noted by the superior court, Petitioner's threat assessment was "contingent upon alcohol abstinence." Id. at p. 49. This was significant given that Petitioner had an extensive history of alcohol abuse over several years leading up to the underlying offense. While Petitioner maintained at the hearing that he would abstain from alcohol if released, the Board found that it had no reassurance from any

evidence other than Petitioner's own self-serving statements that he would do so. Notably, there was no evidence that Petitioner had formulated plans to remain alcohol free if released or that he had made efforts to determine what resources would be available to assist him in maintaining his sobriety.  The Board stated it found important the fact that Petitioner still had little or no insight into his own behavior. Based on the mental health evaluations, the Board noted that Petitioner had still not taken responsibility for his own actions by continuing to blame alcohol for his actions and his alcohol abuse on his failed marriage. As a result, the superior court found the Board properly determined Petitioner posed an unreasonable risk of danger to society if released. Based on the evidence, the superior court's rejection of Petitioner's claim was not unreasonable.

The Board also found that Petitioner needed to seek psychological programming while incarcerated. However, the superior court rejected this finding because the Board noted that such programming was "probably not available." See Exhibit 5 at p. 2. Likewise, the superior court rejected the Board's finding of unsuitability due to a lack of parole plans because Petitioner would be removed to Mexico upon release.

Finally, the Board found the many oppositions presented to the panel strongly supported a finding of unsuitability. The Gilroy Police Department and the Santa Clara County District Attorney opposed parole. In addition, Petitioner's daughters presented strenuous objections to his release. This evidence was properly considered pursuant to 15 C.C.R. § 2402(b), which provides that "[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole."

In sum, while the Board made several findings that were not supported by the evidence, on balance it is clear there was some evidence supporting the Board finding of unsuitability, and it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and
2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 26, 2007**                              /s/ Sandra M. Snyder
                                                                    UNITED STATES MAGISTRATE JUDGE